IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:15-CV-280

| REBECCA S. FORBES, | ) |  |
|---|---|---|
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| v. | ) | **ORDER** |
|  | ) |  |
| NANCY A. BERRYHILL, | ) |  |
| ACTING COMMISSIONER OF SOCIAL | ) |  |
| SECURITY,[1] | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |
|  | ) |  |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's Motion for Summary Judgment [Doc. 12] and Defendant's Motion for Summary Judgment [Doc. 14]. Because the parties' filings have been fully briefed and are currently pending, this matter is now ripe for disposition.

For the reasons that follow, the Plaintiff's Motion for Summary Judgment is **DENIED**, the Defendant's Motion for Summary Judgment is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.      **BACKGROUND**

On December 2, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") [Tr. 216–218] and Supplemental Security Income ("SSI") [Tr. 191–197] under Titles II and XVI of the Social Security Act, 42 U.S.C. § 405, *et seq.*, alleging an onset date of disability of January 15, 2011. The Commissioner of Social Security (the "Commissioner" or "Defendant")

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. The Clerk is directed to substitute Nancy A. Berryhill for Carolyn W. Colvin as the Defendant in this matter. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

first denied Plaintiff's application on June 26, 2012 [Tr. 154–162], and upon reconsideration on October 9, 2012 [Tr. 168–185]. On November 8, 2012, Plaintiff timely filed a written request for a hearing. [Tr. 186–187].

On January 15, 2014, Plaintiff appeared in Hendersonville, North Carolina and testified at a video hearing before Administrative Law Judge John S. Lamb ("ALJ"), who presided over the hearing from Greenville, South Carolina. [Tr. 19–30; 188]. On March 14, 2014, the ALJ issued a decision denying Plaintiff's claim. [Tr. 16–30]. On April 1, 2014, Plaintiff filed a request for review of the ALJ's decision [Tr. 14–15], which was denied by the Appeals Council on June 18, 2015 [Tr. 8–10]. On December 14, 2015, Plaintiff's Complaint seeking a reversal of the ALJ's determination was filed in this Court. [Doc. 1]. Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and accompanying brief in support of Plaintiff's Motion were filed on May 31, 2016. [Doc. 12]. Defendant's Motion for Summary Judgment ("Defendant's Motion) [Doc. 14] and accompanying brief in support of Defendant's Motion [Doc. 15] were filed on August 29, 2015.

**II.    DISCUSSION**

A.    Standard of Review

Pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to determining: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal

standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a *scintilla* and must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Indeed, "[i]t means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Smith*, 782 F.2d at 1179; *Rhyne*, 2010 U.S. Dist. LEXIS 142595, at *7-9. Critically, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015). The standard is met by "less than a preponderance" of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

"In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, *supra*, at 1456; *Rhyne*, 2010 U.S. Dist. LEXIS 142595, *9.

Therefore, the issue before this Court is not whether Plaintiff *is* disabled, but whether the Commissioner's finding that he is *not* disabled is explained and supported by substantial evidence, and that such decision was reached based upon a correct application of the relevant law.

B. <u>Five-Step Sequential Analysis</u>

The Social Security Administration (the "SSA") has defined disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to last for a period of at least 12 months. *See* 20 C.F.R. § 404.1505(a). To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See*, *e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). If at any step in the sequential evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

To that end, federal law requires that an ALJ evaluate a claimant's application for disability benefits by considering whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment (i.e., from performing "other work"). 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of his insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step-five, the burden of production shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, work experience, and residual functional

capacity. *Grant*, 699 F.2d at 191. Here, the ALJ determined at the fifth step that Plaintiff was not disabled. [Tr. 42–43]. At the fifth step, the ALJ found that, based on the testimony of the vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity," jobs exist in significant numbers in the national economy that Plaintiff could perform. [Tr. 29].

### C. Weight Assigned to Treating Physicians' Evidence

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Social Security regulations require an ALJ to "evaluate every medical opinion" regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro*, 270 F.3d at 178. The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996), but the ALJ must nevertheless assign a weight to the medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

In discounting the opinions of a treating source, the ALJ must give "good reasons" for doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's explanation of these "good reasons" "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2P, 1996 WL 374188, at *5 (July 2, 1996).

5

However, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence). Further, a treating source's opinion that rests predominately upon a claimant's subjective complaints is of discounted probative value. *See* S.S.R. 96-7p, 1996 SSR LEXIS 4; *accord Morris v. Barnhart*, 78 F. App'x 820, 824-25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." (citing *Craig*, 76 F.3d at 590 n.2)).

    D.    <u>Analysis</u>

        1.    *ALJ's Step Three finding*

In her brief, Plaintiff first argues that the ALJ erred in his step three finding that Plaintiff's condition does not meeting all of the criteria in Listing 1.04A. [Doc. 12-1] at 4. Plaintiff argues that the record includes evidence of a "moderate disc bulge at L4-5," "positive straight leg raising," "radiculopathy," "lower limb pain, weakness, tingling, numbness and falls," "narrow based gait," and "limited motion ('hip flexion limitation')." [Doc. 12-1] at 4 (citing Tr. 365-366 and 545). Plaintiff also asserts that the record includes evidence of "reflex loss and reduced strength . . . in [her] ankle" and "motor loss . . . in her gait instability." *Id.* at 4–5 (citing Tr. 362, 368, and 370). Plaintiff further asserts that "the ALJ omitted consideration of the Plaintiff's facet arthropathy and congenital spine disorder at Steps two and three," and failed to appropriately evaluate Plaintiff's obesity at step three. *Id.* at 5. Defendant argues that the "record supports the ALJ's finding that Ms. Forbes did not prove she has the motor loss necessary to meet the Listing requirement." [Doc. 15] at 5. Defendant then asserts that "even if [Defendant] had made that showing, she still does

not meet the Listing because she cannot show, as she must, that spinal stenosis in her lower back resulted in impingement of the spinal cord or of a nerve root." *Id.* Additionally, Defendant argues that it was not necessary for the ALJ to specifically include "facet arthropathy and congenital spine disorders" among Plaintiff's severe impairments because "neither impairment caused symptoms or limitations other than those the ALJ already identified." [Doc. 15] at 8. Defendant asserts that even if the ALJ should have specifically identified "facet arthropathy and congenital spine disorders," any error was harmless because "ALJ discussed limitations arising from those impairments when he analyzed [Plaintiff's] residual functional capacity." *Id.* at 9.

In step three, the ALJ must determine whether "the claimant's impairment matches or is 'equal' to one of the listed impairments." *Sullivan v. Zebley*, 593 U.S. 521, 525 (1990) (quoting 20 C.F.R. § 416.920(a)(4)(iii)). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Listing 1.04 states the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

The ALJ cites evidence that multiple medical evaluations in the record indicate that Plaintiff has "normal neurological examinations," "full muscle strength," "equal reflexes," "normal abilities to squat and rise," "normal range of motion of the back," "normal gait,"

and "normal extremities." [Tr. 23] (citing Tr. 540–545; 637–663). In his step three analysis, the ALJ states, "[t]he medical evidence of record did not indicate the presence of motor loss accompanied by sensory or reflex loss or of positive straight leg raising, spinal arachnoiditis or pseudoclaudication and inability to ambulate effectively as required to meet Listing 1.04." [Tr. 24].

Additionally, remand is not required for Defendant's alleged failure to consider Plaintiff's "facet arthropathy and congenital spine disorders" at steps two and three. "[A]n ALJ's failure to find a particular impairment 'severe,' is harmless if he or she finds other impairment(s) severe, and considers the omitted impairment(s) at subsequent steps." *Roberts v. Colvin*, No. 1:13CV63, 2014 WL 3529780, at *2 (W.D.N.C. July 15, 2014) (citing *Keever v. Astrue*, No. 11-148, 2012 WL 2458376 at *7 (W.D.N.C. June 1, 2012)). Here, the ALJ discussed Plaintiff's limitations arising from her back impairments at later steps. *See* [Tr. 26–28]. The Court finds that the ALJ's determination was explained and supported by substantial evidence in the record.

2. *ALJ's analysis of obesity*

Plaintiff argues that the ALJ failed to properly evaluate her obesity in combination with other severe impairments. Plaintiff asserts that the "ALJ did not provide an individualized assessment, but merely provided boilerplate reference to the impact that obesity 'may' have, and then he made reference to a few mentions of obesity in the record." [Doc. 12-1] at 5 (citing [Tr. 24]). Defendant argues that the plain language of the ALJ's decision indicates that the "ALJ identified several factors relating to obesity that he considered in evaluating Ms. Forbes' impairments under the Listings." [Doc. 15] at 10; *see also* [Tr. 24].

The Court finds that the ALJ's explicit reference to his evaluation of Plaintiff's obesity, "even though no treating or examining medical source has specifically attributed additional or cumulative limitations to [Plaintiff's] obesity," sufficiently satisfies the step three evaluation requirements. [Tr. 24]. Additionally, the ALJ's reference to Plaintiff's obesity and her difficulty losing weight in his RFC analysis indicates that obesity was sufficiently considered. [Tr. 26]. This finding is supported in the record, where medical opinion evidence referenced Plaintiff's obesity, but did not attribute specific limitations to it. [Tr. 116 and 545]. Also, evidence in the record does not support Plaintiff's subjective statements regarding her symptoms, and the ALJ properly refused to adopt her statements. The Court finds that the ALJ's determination was sufficiently explained and supported by substantial evidence in the record.

3. *ALJ analysis of Plaintiff's subjective symptoms*

Plaintiff argues that the ALJ found her subjective allegations "not fully credible because they were 'not supported by the objective medical evidence of record.'" [Doc. 12-1] at 8 (quoting [T. 27]). Plaintiff asserts that "[w]hile the ALJ must consider objective evidence, he cannot require that the Plaintiff be 'fully credible' based on it alone," and that "[s]ubjective complaints must be addressed under the pain standard." *Id.* (citing *Hines v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002)). Defendant argues that the "ALJ evaluated [Plaintiff's] subjective allegations in accordance with the applicable law and substantial evidence supports his conclusions," and that "the plain language of the ALJ's decision makes clear that the decision was based not on any single fact, but on the record as a whole." [Doc. 15] at 13–14.

9

The Court finds that the ALJ appropriately analyzed Plaintiff's subjective symptoms. "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). The ALJ states that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Tr. 27]. The ALJ provides several examples of inconsistencies between Plaintiff's subjective symptoms and objective medical evidence. For example, the ALJ explains that Plaintiff "alleges that she experiences constant back and right leg pain that is a 7–9 on a 10-point pain scale and prevents her from working. However, the medical evidence of record reveals that treatment for [Plaintiff's] back pain has been relatively sparse and has consisted of primarily conservative medication management . . ." *Id.* The ALJ further explains that "[t]hough these inconsistencies reflect negatively on [Plaintiff's] credibility, the undersigned has given the claimant's assertions all due consideration and has addressed her limitations in [Plaintiff's RFC]." *Id.* Given the substantial evidence supporting the ALJ's determination, remand is not required.

4.   *ALJ's analysis of Plaintiff's functional limitations*

Plaintiff argues that the ALJ failed to account for a moderate limitation in concentration, persistence, or pace, the need for a hand-held assistive device, and a limit to working around moving machinery. [Doc. 12-1] at 10–12. Specifically, Plaintiff argues that "the ALJ's RFC finding did not account for [limitations related to concentration, persistence, or pace] or indicate how [ ] Plaintiff would be able to stay on task." *Id.* at 11. Plaintiff also argues that the ALJ did not explain his reason for excluding some of Dr.

Annie Jackson's limitations related to moving machinery and need for a cane "to get up and down on an intermittent basis on 'bad days.'" *Id.* at 11–12 (citing Tr. 543). Defendant argues that "[t]he record does not support any additional limitation to accommodate [Plaintiff's] ability to stay on task—as the ALJ pointed out in his decision, [Plaintiff's] concentration was consistently and grossly normal on examination," and refutes Plaintiff's other allegations. [Doc. 15] at 19 (citing Tr. 27).

The record supports Defendant's assertion that Plaintiff's "concentration was consistently and grossly normal on examination." *See* [Tr. 526–527, 535, 537, 580, 584–585, 589–590, 594–595]. As explained in *Mascio v. Colvin*, "the ALJ may find that the concentration, persistence, or pace limitation does not affect [claimaint's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." 780 F.3d 632, 638 (4th Cir. 2015). The Court finds that the ALJ sufficiently cited evidence of Plaintiff's "good concentration, [ ] normal mood and affect, and good insight and judgment." [Tr. 21] (citing [Tr. 540–545, 296–360, 574–636]). Additionally, the ALJ cites the State agency physicians' findings that "[w]hile [Plaintiff] will likely have difficulty concentrating and completing a workday without interruptions from psychologically based symptoms at times, she does appear capable of *maintaining* concentration, persistence and pace while performing simple tasks." [Tr. 27, 134] (emphasis added).

The Court rejects Plaintiff's allegation that the ALJ excluded Dr. Jackson's limitation for work involving moving machinery. As Defendant points out, the RFC finding includes a statement that Plaintiff cannot tolerate any job requiring "concentrated exposure to hazards." [Tr. 26]. In this context, "hazard" includes, among other things, "moving

mechanical parts of equipment, tools, or machinery." SSR 96-9p, 1996 WL 374185, at *9 (1996). As a result, the ALJ did not exclude Dr. Jackson's limitations. Lastly, the Court does not find merit in Plaintiff's allegation that the ALJ improperly excluded Dr. Jackson's statement that Plaintiff needs a cane "only to get up and down . . . on an intermittent basis on 'bad days.'" [Tr. 543]. Despite this finding, Dr. Jackson found no limitation in Plaintiff's ability to sit, stand, or walk. *Id.* "[R]emand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio*, 780 F.3d at 636. Here, Dr. Jackson's report states that Plaintiff needs a cane only intermittently on "bad days" to get up and down, appears to be irrelevant given Dr. Jackson's other findings. Ultimately, the Court finds that the ALJ's determination was sufficiently explained and supported by substantial evidence in the record.

**IT IS, THEREFORE, ORDERED THAT**

(1) The Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED**;

(2) The Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**;

(3) The final decision of the Commissioner is **AFFIRMED**; and

(4) Judgment shall be entered by the Clerk accordingly and this case shall be administratively terminated.

Signed: March 3, 2017

Richard L. Voorhees
United States District Judge